IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>          Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>          Defendants. | Case No. 25-cv-5358 |

**COMPLAINT**

Plaintiff[1], ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A attached hereto (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., the Copyright Act, 17 U.S.C. § 101 et seq., and 28 U.S.C. §§ 1338(a) and 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

---

[1] Plaintiff's name (and all other information regarding Plaintiff's identity, trademark, copyrights, or the names of Defendants) is being temporarily withheld to prevent Defendants from obtaining advance notice of this action and Plaintiff's accompanying ex parte Motion for Entry of Temporary Restraining Order and transferring funds out of the accounts that Plaintiff seeks to retrain. Plaintiff is identified on the Certificate of Registration for Plaintiff's Trademark, which is included as Exhibit 1 hereto and filed under seal. Plaintiff will file a sealed unredacted version of this complaint concurrently with this redacted version and intends to proceed as John Doe only until the time Plaintiff has been able to formally serve the Defendants and provided notice of motion for the Preliminary Injunction following expiration of the Temporary Restraining Order.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), as well as the shipment of products offered for sale on those Defendant Internet Stores. Specifically, Defendants are involved in the production, listing for sale, sale, and/or shipping of products to Illinois residents that use counterfeit and/or infringing copies of Plaintiff's federally registered ▮▮▮▮▮▮▮ (Registration No. ▮▮▮▮▮▮▮) and ▮▮▮▮▮▮▮ (Registration No. ▮▮▮▮▮▮▮) trademarks (collectively hereinafter the "Plaintiff's Trademarks"). Defendants are also using unauthorized and infringing copies or versions of Plaintiff's copyright-protected materials, such as product packaging, product photos, and a game rulebook (collectively "Copyrighted Material") on the infringing products and/or the product listings for those products. True and correct copies of the U.S. Certificates of Registration for Plaintiff's Trademarks are attached as Exhibit 1 and true and correct copies of the Certificates of Registration for Plaintiff's Copyrighted Material and examples thereof are attached as Exhibit 2. Defendants have committed and knowingly participated in the commission of tortious acts in Illinois, causing Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.     Plaintiff specializes in the design, manufacture, sale, and distribution of high-quality toy products, including the puzzle and logic games at issue in this matter. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit

and/or infringing products using counterfeit versions of Plaintiff's Trademarks and/or Copyrighted Material (the "Counterfeit/Infringing Products"). On information and belief, Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine copies of Plaintiff's products, while actually selling Counterfeit/Infringing Products to unknowing consumers.

4. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and/or infringing operations, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their Counterfeit/Infringing Products.

5. Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Trademarks and Copyrighted Material as well as to protect unknowing consumers from purchasing the Counterfeit/Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Trademarks and Copyrighted Material and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

## THE PARTIES

### Plaintiff, ███████████████, LLC

6. Plaintiff, ███████████████, LLC, is a limited liability company organized and existing under the laws of Territory of Puerto Rico, having a place of business at ███████████████████████████████████, San Juan, Puerto Rico ██████.

7. ▮▮▮▮▮▮▮▮▮▮, the founder and sole owner of Plaintiff ▮▮▮▮▮▮ ▮▮▮▮▮▮▮, LLC, is the creator of high-quality toy products, primarily puzzle games, including the highly successful "▮▮▮▮▮▮▮" first introduced in 2021, and the "▮▮▮▮▮▮▮▮▮" building game (marketed under the ▮▮▮▮▮▮▮ brand) introduced in 2023 (collectively "Plaintiff's Products"), which Plaintiff manufactures, sells, and distributes. Plaintiff created Plaintiff's Products with the purpose of bringing families together.

8. Since 2021, Plaintiff has generated tens of millions of dollars in sales of Plaintiff's Products, including $30 million in 2024 alone, up from $12 million in 2023. Plaintiff sells Plaintiff's Products through its website (www.▮▮▮▮▮▮▮.com) as well as their official Amazon and Walmart storefronts.

9. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, and in full force and effect. The registrations for Plaintiff's Trademarks constitute *prima facie* evidence of the validity of the Trademarks and of Plaintiff's exclusive right to use Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff since as early as July 2021 (for ▮▮▮▮▮▮▮) and July 2023 (for ▮▮▮▮▮▮▮▮) and have never been abandoned.

10. Plaintiff's Trademarks are displayed extensively in connection with Plaintiff's Products. Plaintiff's Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense. Since 2021, Plaintiff has spent over $16 million advertising its products using Plaintiff's Trademarks and the Copyrighted Material. Plaintiff's Products have over 5,000 reviews on Amazon alone and have achieved an impressive rating of 4.6 out of 5 stars. Because of these and other factors, Plaintiff's Trademarks and Copyrighted Material have become well-known.

11. Plaintiff's Trademarks are distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Plaintiff has ensured that products bearing its Trademarks are manufactured to the highest quality standards. Plaintiff's Trademarks have achieved wide recognition, which has only added to the inherent distinctiveness of Plaintiff's Trademarks.

12. Plaintiff also uses the Copyrighted Material, a variety of copyright-protected original works of authorship that have been registered with the U.S. Copyright Office, while selling Plaintiff's Products, such as product packings, product photos, and rulebook.

13. Plaintiff has never assigned or licensed its Copyrighted Material or Plaintiff's Trademarks to any of the Defendants in this matter.

14. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Material.

**Defendants**

15. Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of the Counterfeit/Infringing Products, which use counterfeit and/or infringing versions of Plaintiff's Trademarks and which are sold on e-commerce listings using infringing copies or versions of Plaintiff's Copyrighted Material. Each Defendant has targeted Illinois by selling or offering to sell or knowingly assisting in the selling or offering to sell,

Counterfeit/Infringing Products to Illinois consumers via various online stores, including Alibaba, Aliexpress, eBay, Temu, and Walmart.

16. Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products. The Defendant Internet Stores share unique identifiers, such as the following: common design elements, the same or similar Counterfeit/Infringing Products that they offer for sale, similar Counterfeit/Infringing Product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced Counterfeit/Infringing Products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting and/or infringing operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit/infringing network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

17. Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's Trademarks and Copyrighted Material. Consequently, Plaintiff maintains and/or oversees an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has recently identified hundreds of fully interactive, commercial Internet stores on various e-commerce

platforms, including the Defendant Internet Stores, which are offering Counterfeit/Infringing Products for sale to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $509 billion in annual online sales in 2016 alone. *See* Exhibit 3, Report concerning "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans dated January 24, 2020, at 4. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2018 was over $1.4 billion. *See id*. at 8.

18. E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters/infringers to routinely use false or inaccurate names and addresses when registering with these e-commerce platforms. *See* Ex. 3 at 22 (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and stating that "[s]ignificantly enhanced vetting of third-party sellers" is necessary).

19. Counterfeiters/infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. *See* Ex. 3 at 22. While some platforms such as Amazon have recently taken steps to attempt to address these shortcomings, the foregoing deficiencies largely remain.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in

U.S. dollars and, on information and belief, having sold Counterfeit/Infringing Products to residents of Illinois.

21. Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Trademarks or Copyrighted Material, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

22. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete information to e-commerce platforms, including at least Alibaba, Aliexpress, eBay, Temu, and Walmart. On information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

23. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit/Infringing Products on e-commerce platforms such as Alibaba, Aliexpress, eBay, Temu, and Walmart. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting/infringing operation, and to avoid being shut down or held accountable for their infringement.

24. Groups of counterfeiters/infringers such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also

communicate through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits. Participants on these websites monitor Pacer and/or other websites reporting on US cases for new filings in US courts on a constant basis and share all available information regarding new infringement lawsuits as soon as they are filed, or new documents are added to the docket.

25. Counterfeiters/infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters/infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

26. Defendants have engaged in, and continue to engage in, the unauthorized reproduction, distribution, and public display of Plaintiff's Copyrighted Material and/or materials substantially similar thereto at least through said internet stores.

27. Defendants' use of Plaintiff's Trademarks and Copyrighted Material in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit/Infringing Products, including the sale of Counterfeit/Infringing Products into the United States, including Illinois, is

likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Plaintiff hereby re-alleges and incorporates by reference all the allegations set forth in the preceding paragraphs.

29. Plaintiff's Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's Products offered, sold, and/or marketed under Plaintiff's Trademarks.

30. Defendants have sold, offered for sale, marketed, distributed, and advertised, products using counterfeit/infringing reproductions of Plaintiff's Trademarks without Plaintiff's permission.

31. Plaintiff is the exclusive owner of Plaintiff's Trademarks. Plaintiff's United States Registrations for Plaintiff's Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiff's Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit/Infringing Products among the public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff's Trademarks.

34. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful advertisement, promotion, offering to sell, and sale of unauthorized versions of Plaintiff's Products using Plaintiff's Trademarks.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

   a) using Plaintiff's Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

   b) passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff's and approved by Plaintiff for sale under Plaintiff's Trademarks;

   c) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d) further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill;

   e) manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff

to be sold or offered for sale, and which bear Plaintiff's Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, all persons acting for, with, by, through, under or in active concert with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as, Alibaba, Aliexpress, eBay, Temu, and Walmart, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, and Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

a) disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiff's Trademarks;

b) disable and cease displaying all product listings and advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Trademarks; and

c) take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

Case: 1:25-cv-05358 Document #: 1 Filed: 05/14/25 Page 13 of 20 PageID #:13

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 per infringed mark per type of good sold;

5) That Plaintiff be awarded their reasonable attorneys' fees and costs; and

6) That Plaintiff be awarded any and all other relief that this Court deems just and proper.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

35. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' promotion, marketing, offering for sale, and sale of the Counterfeit/Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit/Infringing Products by Plaintiff.

37. By using Plaintiff's Trademarks on the Counterfeit/Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit/Infringing Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit/Infringing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

    a) using Plaintiff's Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

    b) passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

    c) committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d) further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

    e) manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding the statutory limit;

3) Plaintiff's costs and reasonable attorneys' fees;

4) Both pre-judgment and post-judgment interest; and

5) Such other and further relief as this Court finds just and equitable.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

40. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit/Infringing Products as those of Plaintiff, causing a likelihood of confusion as to the source of their goods, causing a likelihood of confusion as to an affiliation, connection, or association with genuine versions of Plaintiff's Products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion among the public.

42. The foregoing acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

43. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to their reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiff's Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff be sold in connection with Plaintiff's Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit/Infringing Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear Plaintiff's Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Plaintiff's costs and reasonable attorneys' fees pursuant to 815 ILCS § 510/3;

3) Such other and further relief as this Court finds just and equitable.

## COUNT IV
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

44. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45. Plaintiff's Copyrighted Material, attached hereto as Exhibit 2, constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102.

46. Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Material.

47. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Material and has obtained valid copyright registrations for Plaintiff's Copyrighted Material.

48. Defendants do not have any ownership interest in Plaintiff's Copyrighted Material.

49. Defendants had access to the Plaintiff's Copyrighted Material via the Internet and other sources.

50. Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, works incorporating Plaintiff's Copyrighted Material, in connection with their operation of the Defendant Internet Stores.

51. Defendants sell their Counterfeit/Infringing Products using e-commerce listings which use marketing material that is virtually identical to and/or are substantially similar to Plaintiff's Copyrighted Material.

52. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's Copyrighted Material in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

53. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Material through their receipt of substantial revenue, including substantial profit, driven by sales of their Counterfeit/Infringing Products.

54. Defendants have unlawfully appropriated Plaintiff's protectable expression by advertising and/or selling Counterfeit/Infringing Products with e-commerce listings which utilize material either the same or are otherwise are substantially similar to Plaintiff's Copyrighted Material.

55. On information and belief, Defendants' infringement of Plaintiff's copyrights has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights.

56. Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

57. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

58. In light of the foregoing, Plaintiff seeks: (i) Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights by Defendants pursuant to 17 U.S.C. § 502; and (ii) monetary relief in the form of statutory damages and attorneys' fees pursuant to 17 U.S.C. §§ 504(c)(2) and 505, or, in the alternative, actual damages pursuant to 17 U.S.C. § 504(b).

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from reproducing, publicly displaying, and distributing copies Plaintiff's Copyrighted Material and all colorable imitations thereof, and from preparing derivative works based upon Plaintiff's Copyrighted Material, and in assisting third-parties in such activity, pursuant to 17 U.S.C. § 502;

2) That Defendants destroy all copies of Plaintiff's Copyrighted Material and all colorable imitations thereof, as well as all works derivative thereof, made by, or made under the control of, Defendants pursuant to 17 U.S.C. § 503(b);

3) That Plaintiff be awarded statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount of $150,000 per infringed work;

4) That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

5) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Copyrighted Material as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

6) That Plaintiff be awarded any and all other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

| | |
|---|---|
| Dated: May 14, 2025 | Respectfully submitted, |
| | /s/BRANDON BEYMER |
| | BRANDON BEYMER (ARDC NO. 6332454) |
| | DALIAH SAPER (ARDC NO. 6283932) |
| | SAPER LAW OFFICES, LLC |
| | 505 N. LASALLE, SUITE 350 |
| | CHICAGO, ILLINOIS 60654 |
| | (312) 527-4100 |
| | BRANDON@SAPERLAW.COM |
| | DS@SAPERLAW.COM |
| | ATTORNEYS FOR PLAINTIFF |